# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| **JACQUELYNN WILLIAMS, et al.,** | CASE NO. 3:20 CV 591 |
| Plaintiffs, | |
| v. | JUDGE JAMES R. KNEPP II |
| **EDWARD SYPHAN, et al.,** | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | |

### INTRODUCTION

Pending before the Court are Defendants' Motion for Summary Judgment (Doc. 46), Motion to Strike Plaintiffs' Expert Witness Disclosure (Doc. 50), and Motion for Partial Summary Judgment as to Plaintiffs' Claim for Loss of Future Earnings (Doc. 63). Additionally, Plaintiffs moved to compel the deposition of Dr. Natalie Hartenbaum, (Doc. 54), and for leave to name an expert witness (Doc. 56).

Oral argument was held as to all these motions on October 5, 2021. Following that argument, Defendants filed a Motion to Exclude Plaintiffs' Expert Henry Lipian. (Doc. 80). Plaintiffs opposed the motion (Doc. 84), and the Court held a hearing on January 11, 2022.

For the following reasons, the Court grants Defendants' Motion seeking to preclude Lipian from offering an opinion that Plaintiff's decedent was located on the shoulder of the highway when he was struck and killed. As a result of Lipian's exclusion, the Court grants Defendants' Motion for Summary Judgment (Doc. 46), and denies as moot all other pending motions (Docs. 50, 54, 56, and 63).

**BACKGROUND**

This case stems from a fatal truck-pedestrian accident on the Ohio Turnpike. James Williams died on July 17, 2018, after a semi-truck hit him around 3:18 a.m. (Doc. 64-6, at 1). Defendant Edward Syphan drove that truck while employed by the other Defendant, Pitt Ohio Express, LLC. (Doc. 64-4, at 2-4).

Early in the morning of July 17, prior to the fatal crash, Williams was driving eastbound on the Ohio Turnpike when his vehicle traveled onto the shoulder and struck the guardrail. (Doc. 64-14, at 12-14). Williams, in his car, then crossed three lanes of traffic before striking the center barrier on the other side of the road; this disabled his vehicle. *Id.* at 14-16. He left the vehicle on foot. (Doc. 46-4, at 10-11). While Williams was on foot, Defendants' truck struck and killed him. (Doc. 46-7, at 5).

The critically disputed fact is precisely where Williams was when Defendants' truck hit him. Defendants' primary argument for summary judgment is that Williams died by suicide when he put himself in the path of an oncoming truck. (Doc. 46-1, at 13)[1]. The Ohio State Highway Patrol incident narrative indicates troopers believed Williams was "in the roadway when he was struck", treating him as the "at fault unit in this crash." (Doc. 64-4, at 9). Greg Harkey, who investigated the crash, testified Williams was in the through lane when the truck hit him. (Doc. 46-4, at 7). Greg Russell, Defendants' expert, similarly concluded Williams was in the travel portion of the roadway. (Doc. 46-11, at 29). Another expert retained by Defendants, Dan Connolly, opined "Williams was in the roadway the instan[t] the collision occurred in the right eastbound travel lane of the Ohio Turnpike." (Doc. 46-12, at 15). But Plaintiffs' expert, Henry Lipian, a certified

---

1. Defendants provide evidence which suggests Williams was suicidal at the time of his death. *See generally* Doc. 46-1, at 11-15. Because this evidence is not relevant to the Court's analysis, it is not summarized herein.

2

accident reconstructionist, opined Williams was not in the roadway when the truck hit him, but was, instead, on the shoulder of the Turnpike and that the truck departed from the marked lane of travel to strike him. (Doc. 64-2, at 24).

Lipian opines, in a crash reconstruction report, that Syphan failing to drive within the marked traffic lane was the proximate cause of Williams' death, and ". . . as an additional factor [Syphan] was either distracted, not normally alert, or a combination of both." *Id.*

### STANDARD OF REVIEW

Regarding the motion to exclude, "[i]t is the proponent of the testimony that must establish its admissibility by a preponderance of proof." *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001).

Since *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Federal Rules of Evidence have been revised to reflect that case's holding. Specifically, Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. When expert testimony's "factual basis, data, principles, methods, or their application are called sufficiently into question . . . the trial judge must determine whether the testimony has a reliable basis in the knowledge and experience of the relevant discipline." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999). "District court judges must determine whether

3

an expert's testimony is both relevant and reliable when ruling on its admission." *Clay v. Ford Motor Co.*, 215 F.3d 663, 667 (6th Cir. 2000)

Summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. With notice and a reasonable time to respond, the Court may grant summary judgment on grounds not raised by a party. Fed. R. Civ. P. 56(f)(2).

## DISCUSSION

The Court will address the motions out of chronological order. Resolution of the *Daubert* motion clarifies Defendants' summary judgment motion, the resolution of which moots the remaining partial summary judgment and discovery motions. Therefore, they will be addressed in that order.

### *Daubert* Motion

Defendants argue Lipian's opinion should be excluded because it is not based upon sufficient facts or a reliable methodology. (Doc. 80, at 7-11). Plaintiffs argue Defendants' attacks

4

are better suited for cross-examination, not a motion to exclude, and Lipian is properly qualified to render his opinions. (Doc. 84, at 9-12).

Although there is documented evidence outside the land of travel where Williams first hit the pavement after being launched post-impact from the truck, there is no physical evidence on the roadway surface of where Williams was located when he was struck. Nevertheless, Lipian opined "[t]he evidence is conclusive that at impact, Williams was on the shoulder of the Ohio Turnpike." (Doc. 80-1, at 24). But his report, deposition testimony, and hearing testimony do not show the Court this conclusion is the product of "reliable principles and methods". Fed. R. Evid. 702(c). Therefore, his testimony must be excluded.

It is within the district court's discretion to determine when an opinion has crossed the line between knowledge and speculation. *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671–72 (6th Cir. 2010) ("Rule 702, we recognize, does not require anything approaching absolute certainty. And where one person sees speculation, we acknowledge, another may see knowledge, which is why the district court enjoys broad discretion over where to draw the line. Yet, so long as there is a line, some forms of testimony may cross it, and that happened here . . . . At some point, the train becomes too long to pull and the couplings too weak to hold the cars together.") (internal quotation omitted). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). As the Court noted in *Daubert*, "[t]he focus . . . must be solely on principles and methodology, not on the conclusions that they generate." 509 U.S. at 595. But methodology and conclusions are not entirely distinct from each other – that is, the methodology must not leave too great an analytical gap between it and the conclusion. *Gen. Elec. Co.*, 522 U.S. at 146; *see also Turpin v. Merrell Dow Pharm., Inc.*, 959 F.2d 1349, 1360-61

(1992) ("The analytical gap between the evidence presented and the inferences to be drawn on the ultimate issue of human birth defects is too wide. Under such circumstances, a jury should not be asked to speculate on the issue of causation.").

As the parties acknowledged during oral argument on the summary judgment motion, Plaintiffs' ability to oppose summary judgment relies entirely upon Lipian's conclusion that Williams was standing on the shoulder when Syphan hit him. (Doc. 81, at 43-45). Thus, this Court's analysis of Lipian's expert testimony is focused primarily on the rationale he provides for his conclusion that the impact occurred on the shoulder and not in the through lane.

Lipian's report lacks a sound methodology to support his conclusion. He cites "the totality of the available data" for his conclusion that "William's [sic] position at the first contact point was on the shoulder within 1-2 feet of the white fog line". (Doc. 80-1, at 12). But citation to "the totality of the available data" is insufficient to satisfy Rule 702's requirements. That is, reliance upon "the totality of the available data" permits Lipian, a qualified accident reconstructionist, to provide a conclusion shrouded in an "aura of reliability". *See Moisenko v. Volkswagenwerk Aktiengesellschaft,* 198 F.3d 246, 1999 WL 1045075, at *4 (6th Cir. 1999) (unpublished table disposition). Lipian's conclusion comes from a well-trained source, sounding like expert testimony, but is, in reality, reliant upon his own "*ipse dixit*". *See Gen. Elec. Co.*, 522 U.S. at 146.

Further examination of the report reveals no other analysis elsewhere that reliably supports Lipian's conclusion. Lipian determines the crash caused a "forward projection trajectory", because this is "common when the pedestrian is struck by a vehicle with a high or flat front structure that is at or above the pedestrian's center of mass". (Doc. 80-1, at 4). According to Lipian's report:

> In a normal forward projection, the pedestrian is projected or thrown forward almost immediately after impact (*especially if there is preimpact braking*). The pedestrian then strikes the ground and comes to final rest solely due to the force of the impact with no further interaction with the striking vehicle. If the striking

6

> vehicle is not braking at impact, or immediately after impact, the striking vehicle usually runs the pedestrian over. If the striking vehicle is braking at or before impact, or is turning immediately after impact, the pedestrian is typically not actually run over. In this case there is no evidence that Williams was actually run over by the Freightliner. The pedestrian trajectory in this crash was a forward projection, with the Freightliner likely braking or swerving before or immediately after impact.

*Id.* Later in Lipian's report, he relies upon Williams following the typical path of a forward projection crash. *See* Doc. 80-1, at 7. But Lipian's own logic fails to support his conclusion that a forward projection trajectory is appropriate. He writes a striking vehicle that does not brake at impact or immediately after impact *usually* runs over a pedestrian, while a vehicle that brakes before or at impact, or turns immediately after impact, *typically* does not run over the pedestrian. *Id.* at 4. "Usually" and "typically" do little to rule out the possibility that this crash was an exception to the general rules provided by Lipian. Instead, as with his ultimate conclusion, Lipian impermissibly asks this Court and prospective jurors to rely upon and trust his expertise. Exercising its gatekeeping function, this Court cannot permit him to do so.

      Lipian opines, consistent with photographic evidence, as to the location where the front of the semi-tractor struck Williams as being at and outboard of a rigid frame member on the truck. The frame member was unyielding on impact, but photographs demonstrate other portions of the front surface of the truck broke due to the force of the impact. Thus, at some point during the collision, the shape of the front of the truck distorted and was no longer relatively flat, but became angular to the right side.

      Working backward from the point where Williams' body first struck the pavement, the launch vector of Williams' body from the front of the truck plays a critical role in determining where, laterally, the truck was located on the roadway surface at the time of the impact. In other words, if Williams was projected straight forward to his initial impact with the roadway by a flat

surface impacting him, then it may be likely that he may have been located outside the lane of travel. But if, due to the shape of the front of the truck, pre-impact and as distorted by the crush damage outboard of the frame member, his trajectory was not straight forward from the front of the truck, but, rather, at an angle to the right, then, as a matter of geometry, the collision would have occurred within the lane of travel.

Using a forward projection formula and Syphan's speed at the time of the crash, Lipian calculates Williams was thrown approximately 230 feet from the point of impact. (Doc. 80-1, at 8). That calculation speaks, at best, to how far Williams was thrown. But Lipian, inexplicably, uses this distance to place the truck laterally on the roadway surface, and to opine that Williams was south of (outside) the white fog line bounding the lane of travel when he was struck. *Id.* at 12. Lipian testified there is no mathematical calculation, nor specific rationale, for why the ranges are what he suggests they are in this case. Indeed, during the hearing, Lipian conceded that it was not possible to calculate, with any degree of precision, the vector angle at which Williams was disengaged from the front of the truck.

In summary, Lipian uses a forward projection formula, though he does not adequately support his conclusion that this is a straight forward projection crash. He "considers" additional variables not in the forward projection formula, but does so imprecisely and without explanation. It is within the Court's "broad discretion" to determine when testimony crosses the line from knowledge to speculation. *Tamraz*, 620 F.3d at 672. Finding Lipian's testimony too much speculation and too little applied knowledge, and not the product of reliable principles and methods, the Court excludes Lipian's testimony as to the lateral position of the truck on the roadway surface at the time Williams was struck.

Summary Judgment

During oral argument on Defendants' Motion for Summary Judgment, the Court informed the parties it saw Williams's location at the time of the crash as the ultimate issue in the case. *See* Doc. 81, at 4-8. Indeed, Plaintiffs' counsel acknowledged that without Lipian's testimony, he could not successfully oppose summary judgment. *Id.* at 43-45. Because Lipian's testimony regarding Williams' position is excluded, Defendants are entitled to summary judgment on all claims.

Under Ohio law, "[t]he elements of negligence are: (1) the existence of a duty; (2) breach of the duty; and (3) an injury proximately resulting from the breach." *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465–66 (6th Cir. 2012) (citing *Jeffers v. Olexo*, 43 Ohio St. 3d 140, 142 (1989)). Drivers have a duty to operate their vehicles within marked lanes. *Masterson v. Kerzan*, 1995 WL 136449, at *3 (Ohio Ct. App.). But a driver does not need to look for pedestrians violating his right-of-way. *Snider v. Nieberding*, 2003-Ohio-5715, ¶ 9 (Ohio Ct. App.) (citing *Deming v. Osinki* 24 Ohio St. 2d 179, 180-81 (1970)). The driver's duty to avoid colliding with a pedestrian in his right of way begins only when he sees the pedestrian. *Meyer v. Rapacz*, 2011-Ohio-2537, ¶ 19 (Ohio Ct. App.) ("[U]nder O.R.C. § 4511.48(E), the operator of a motor vehicle must exercise due care to avoid colliding with a pedestrian in his right-of-way upon discovering a dangerous or perilous situation."). It is Plaintiffs' burden, at the summary judgment stage, to bring forth evidence that establishes an issue of material fact concerning an essential element of their case. *Celotex Corp.*, 477 U.S. at 322-23.

Here, viewing the facts in the light most favorable to Plaintiff, there is no admissible evidence that Syphan left the marked roadway and/or that Williams was not in the roadway when Syphan hit him. Therefore, Syphan had no duty to avoid Williams unless Syphan saw Williams first. Syphan testified he never saw Williams, believing he struck a deer and not a pedestrian. (Doc.

9

46-7, at 5-7). The briefing from the parties identifies no evidence that contradicts this testimony, and this Court's own review of the evidence discovered none, either.

The Court recognizes Defendants' Motion for Summary Judgment raised different grounds for summary judgment than the ones upon which it is being granted. But, when the Court asked Plaintiffs' counsel if Lipian's testimony was the only evidence that could establish a duty owed by Syphan to Williams, he conceded the point:

| | |
|---|---|
| **The Court**: | We've got Lipian's testimony that it happened off the roadway. |
| **Riesen**: | That's correct. |
| **The Court**: | And if you don't have that, you can't prove that it happened off the roadway. |
| **Riesen**: | I understand. I don't disagree with that. |

(Doc. 81, at 45). The oral argument regarding Defendants' summary judgment motion occurred October 5, 2021. Defendants subsequently filed a *Daubert* motion, the Court held an additional hearing, and Plaintiffs presented no additional evidence to contradict Syphan's testimony. Therefore, Plaintiffs have failed to meet their burden of identifying an issue of material fact, and summary judgment is granted as to Syphan.

Pitt Ohio is liable for the actions of its employee committed within the scope of his employment. *Dinges v. St. Luke's Hosp.*, 2012-Ohio-2422, ¶ 28 (Ohio Ct. App.) (citing *Hanson v. Kynast*, 24 Ohio St. 3d 171, 173 n.4 (1986)). Because there is no genuine issue of material fact as to Syphan's negligence, Pitt Ohio is similarly entitled to summary judgment. Further, since there is no material issue of fact related to Defendants' liability, Plaintiffs cannot be entitled to punitive damages.

Remaining Motions

With summary judgment granted on all counts for all Defendants, the remaining motions (Docs. 50, 54, 56, 60, 63) are denied as moot.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendants' Motion to Preclude Testimony by Plaintiffs' Expert, Henry P. Lipian, at Trial (Doc. 80) be, and the same hereby is, GRANTED; and it is

FURTHER ORDERED that Defendants' Motion for Summary Judgment (Doc. 46) be, and the same hereby is, GRANTED.

                                                s/ *James R. Knepp II*
                                                UNITED STATES DISTRICT JUDGE